1
2
3
4
5
6            IN THE UNITED STATES DISTRICT COURT

7            FOR THE NORTHERN DISTRICT OF CALIFORNIA

8
9
10   WENDY JOHANNSON,                              No. C 11-02822 WHA

11          Plaintiff,

12     v.                                          **ORDER GRANTING
                                                   DEFENDANT'S MOTION**
13   WACHOVIA MORTGAGE, FSB,                       **FOR SUMMARY JUDGMENT**
     formerly known as World Savings Bank
14   FSB, DEREK WAYNE PHILIPS, doing
     business as DKP MORTGAGE, and
15   JOSEPH STEVEN CANTER,

16          Defendants.

17   _____/

18                          **INTRODUCTION**

19          In this mortgage-loan dispute, one defendant moves for summary judgment against

20   plaintiff.  For the reasons stated below, the motion for summary judgment is **GRANTED**.

21                           **STATEMENT**

22          Plaintiff Wendy Johannson has put in very little evidence into the summary-judgment

23   record, although movant Wachovia Mortgage, FSB has submitted a considerable amount of

24   evidence supporting its side.  Specifically, plaintiff's evidentiary submissions include only a

25   declaration of plaintiff and Attorney James Martinez, her counsel who filed the operative

26   complaint in June 2011 and the opposition to the instant motion, a class-action notice from

27   another action, a copy of the original complaint, and excerpts from relevant pages of plaintiff's

28   expert's report.  Thus, the facts are taken almost entirely from the evidence put forward by

United States District Court

For the Northern District of California

1   defendant, which has gone almost completely unrebutted, and the complaint, where such facts

2   were needed to present a clear understanding of the issues.

3       **1.      ORIGINATION OF LOAN.**

4       Plaintiff acquired property located at 2419 Cathay Way, Sacramento in January 2006

5   (Def. Exh. 1 at 12).  She put down $100,000 of her own money as payment on the property and

6   obtained a loan through Option One Mortgage for the balance of the purchase price (*id*. at 12, 64,

7   90).

8       In August 2006, plaintiff was cold-called by Joseph Canter, who she alleged to be "the

9   employee of defendant Phelps."  Plaintiff has not put in any evidence to establish who employed

10  Mr. Canter at the time he cold-called plaintiff (Sec. Amd. Compl. ¶ 5).  Plaintiff claims that Mr.

11  Canter convinced her to refinance her Option One Mortgage by telling her the new mortgage

12  would have a fixed-interest rate of four percent, a 30-year term, and a payment of $794 per

13  month, including taxes and insurance (Def. Exh. 1 at 12, 18).  Based on these assurances, plaintiff

14  claims to have applied for a $220,000 refinance loan through DKP Mortgage (Def. Exh. 2).

15  Plaintiff testified she made no misrepresentations in her loan application (Def. Exh. 1 at 81).  The

16  loan application states that plaintiff's current monthly impound for taxes and insurance was $275

17  and $50, respectively (Def. Exh. 2 at 2).  A substitute high school math teacher, plaintiff, did not

18  calculate whether it was mathematically possible to have a $794 monthly payment including

19  interest, principal, taxes, and insurance on a $220,000 loan with a fixed-interest rate of four

20  percent (Def. Exh. 1 at 113–14).  Based on the loan application, defendant sent plaintiff a

21  conditional loan approval letter advising her that she was conditionally approved for an adjustable

22  rate pick-a-payment loan with an initial interest rate of 7.510% (Def. Exh. 3 ).  This was a higher

23  interest rate than the four percent.

24      Plaintiff executed the loan documents on September 8, 2006.  The loan documents

25  contained a host of disclosures, including information about the prepayment penalty, the interest

26  rate on the loan, and her right to cancel (Dolan Decl. ¶ 9; Def. Exhs. 8, 9, 10, 22).  Plaintiff signed

27  each of these documents (*ibid*).  The record includes an unsigned copy of the loan program

28  disclosure form (Def. Exh. 11).  Plaintiff, however, did sign an acknowledgment letter,

**United States District Court**
For the Northern District of California

2

acknowledging receipt of the loan program disclosure form (Def. Exh. 12).  Plaintiff testified she read the language telling her to read the entire note before signing it but did not do so.  The minimum payment was listed as $ 1,127.48, more than $794 (Def. Exh. 1 at 70).

Defendant sent plaintiff monthly loan statements beginning with a statement dated September 16, 2006 (Dolan Decl. ¶ 10; Def. Exh. 13).  The statement showed that the interest due was more than the minimum payment on the loan and listed the amount of deferred interest (Def. Exh. 13).

In early January 2008, plaintiff "explicitly told Defendant Wachovia Mortgage that the loan was fraudulent" (Johannson Decl. ¶ 3).  Plaintiff went into payment default in February 2008 (Dolan Decl. ¶ 12).  Plaintiff claims to have discovered that she had a negative-amortization loan in late December 2007, when she learned about such loans while at a gathering with friends.  She subsequently reviewed her monthly loan statements, and based on this review concluded that her loan was a negative-amortization loan (Def. Exh. 1 at 28, 30–31).

### 2. LOAN MODIFICATION AND FORECLOSURE.

After defaulting on her loan, plaintiff began the process of trying to modify it.  Plaintiff retained Attorney Brian Kucsan in September 2008 to assist her in modifying the loan (Def. Exh. 1 at 45) (Attorney Martinez is plaintiff's current counsel of record who filed the operative complaint and the opposition to the instant motion).  Mr. Kucsan communicated with Attorney Mary-Kay Gaver, outside counsel for Wachovia, regarding the possibility of loan modification (Kucsan Decl. ¶ 3; Gaver Decl. ¶ 3).  On September 18, 2008, Attorney Gaver sent Attorney Kucsan's office an email stating that a legal hold had been placed on the files for all of his clients (Gaver Decl. ¶ 4; Def. Exh. 14).  Neither plaintiff nor her attorney offered anything to defendant in exchange for this legal-hold status (Kucsan Decl. ¶ 6; Gaver Decl. ¶ 4).

On October 3, 2008, Attorney Gaver sent Attorney Kucsan an email informing him that plaintiff did not qualify for a PGE loan-modification program, and asked for updated financial information for "any of the borrowers who did not qualify for the PGE program" (Gaver Decl. ¶ 5; Def. Exh. 15).  The requested information was not provided to Attorney Gaver before

1   December 4, 2008 (Gaver Decl. ¶ 6).  On December 4, defendant foreclosed on the subject

2   property (Dolan Decl. ¶ 14).

3         Despite the foreclosure, Attorney Gaver reviewed plaintiff for a loan modification yet

4   again (Gaver Decl. ¶ 7).  Attorney Gaver told Attorney Kucsan that if plaintiff qualified for loan

5   modification, "Wachovia would rescind the foreclosure and return title to her pursuant to the

6   terms of the modified loan . . . [and] would hold off the eviction process needed to obtain

7   possession of the property unless and until it determined that Ms. Johannson did not qualify for a

8   loan modification" (Gaver Decl. ¶ 7).  Defendant conducted that loan-modification review

9   between December 2008 and early 2009 (Dolan Decl. ¶ 15).  Defendant determined that

10  plaintiff's debt-to-income ratio made her ineligible for a loan modification under the programs

11  then in place (*ibid*.).  Defendant's underwriters determined that plaintiff's sporadic

12  unemployment did not indicate sufficient income to justify a modification under applicable

13  guidelines (Dolan Decl. ¶ 15; Gaver Decl. ¶ 8).  On February 3, 2009, Attorney Gaver informed

14  Attorney Kucsan that plaintiff would not be offered a modification and that defendant would

15  proceed with an action to obtain possession of the property (Gaver Decl. ¶ 9; Kucsan Decl. ¶ 8).

16  Defendant never promised or guaranteed plaintiff that she would be provided a loan modification

17  (Gaver Decl. ¶ 10; Kucsan Decl. ¶ 5).  No Wachovia representative ever told Attorney Kucsan

18  that plaintiff qualified for a loan modification (*ibid.*).  Defendant began an unlawful detainer

19  proceeding in May 2009 (Bailey Decl. ¶ 4).  Plaintiff remained in possession of the property until

20  late 2009, when defendant received a judgment in its favor in the unlawful detainer action (Def.

21  Exh. 6).

22        Plaintiff filed this action in Alameda County Superior Court *pro se* on November 3, 2009.

23  After proceeding *pro se* with her original and first amended complaints, plaintiff retained counsel,

24  who filed a second amended complaint in state court on June 9, 2011.  The action was removed to

25  federal court by defendant.  The second amended complaint asserts seven claims for relief against

26  defendant.  Two claims were dismissed by prior order.  Plaintiff was granted leave to file an

27  amended complaint as to those claims but failed to do so.  The following claims remain against

28  defendant:  (1) fraud by intentional misrepresentation; (2) fraud by suppression of fact;

**United States District Court**
For the Northern District of California

4

1  (3) intentional infliction of emotional distress; (4) violation of California Business and

2  Professions Code Section 17200; and (5) violation of the Truth in Lending Act.  Defendant moves

3  for summary judgment on each of these claims.  No other defendant has moved for summary

4  judgment as to the claims against them.  This order follows full briefing and a hearing.

5                                          **ANALYSIS**

6          Summary judgment is proper when "there is no genuine dispute as to any material fact and

7  the defendant is entitled to judgment as a matter of law."  FRCP 56(a).  Where the party moving

8  for summary judgment would bear the burden of proof at trial, that party bears the initial burden

9  of producing evidence that would entitle it to a directed verdict if uncontroverted at trial.  *See*

10  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.,* 213 F.3d 474, 480 (9th Cir. 2000).  Where

11  the party moving for summary judgment would not bear the burden of proof at trial, that party

12  bears the initial burden of either producing evidence that negates an essential element of the non-

13  moving party's claims, or showing that the non-moving party does not have enough evidence of

14  an essential element to carry its ultimate burden of persuasion at trial.  If the moving party

15  satisfies its initial burden of production, then the non-moving party must produce admissible

16  evidence to show there exists a genuine issue of material fact.  *See Nissan Fire & Marine Ins. Co.*

17  *v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

18      **1.    STATUTE OF LIMITATIONS.**

19          Defendant seeks summary judgment on the following claims on the grounds that they are

20  time-barred:  (1) intentional misrepresentation based on alleged fraud at the time of the

21  origination of the loan; (2) suppression of facts based on alleged fraud at the time of the

22  origination of the loan; (3) intentional infliction of emotional distress, and (4) TILA.  It should be

23  noted at the outset that plaintiff's claims for intentional misrepresentation and suppression of fact

24  are each based on two separate instances of alleged fraud.  As to both claims, plaintiff alleges that

25  she was misled, namely by her real estate agent, about the terms of the loan at the time of

26  origination.  She also alleges, as to both claims, that defendant lied to her about a postponement

27  of the foreclosure.  Defendant only raises the time-bar challenge as to the fraud claims relating to

28

**United States District Court**
For the Northern District of California

5

1    the loan origination.  The fraud claims relating to the postponement of the foreclosure are

2    challenged on other grounds and addressed below.

3              **A.      Intentional Misrepresentation and Suppression of Facts Claims.**

4              Plaintiff obtained the allegedly fraudulent loan on September 8, 2006, and filed the instant

5    action on November 3, 2009, approximately two months after defendant contends the statute of

6    limitations ran on plaintiff's claims for intentional misrepresentation and suppression of facts,

7    with regard to the origination of the loan.  Both fraud claims have a three-year statute of

8    limitations.  The prior order of dismissal stated that plaintiff had alleged sufficient factual

9    allegations regarding delayed discovery of her fraud claims, which could create a basis to toll the

10   statute of limitations (Dkt. No. 32 at 5).  Discovery is now complete.  Plaintiff has failed to put

11   forward evidence in the summary-judgment record to support her tolling allegations.

12             Generally, a cause of action accrues at the time when the cause of action is complete with

13   all of its elements.  *Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal. 4th 797, 806 (2005).  An exception

14   to the accrual rule is the "discovery rule," which "postpones accrual of a cause of action until the

15   plaintiff discovers, or has reason to discover the cause of action."  *Id.* at 803, 807 ("under the

16   delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when

17   the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads

18   and proves that a reasonable investigation at that time would not have revealed a factual basis for

19   that particular cause of action").  Pursuant to state statute, an action for relief on the ground of

20   fraud is "not deemed to have accrued until the discovery, by the aggrieved party, of the facts

21   constituting the fraud."  CAL. CIV. PROC. § 338(d).

22              But the courts have read into the statute a duty to exercise
               diligence to discover the facts.  The rule is that the plaintiff must
23              plead and prove the facts showing:  (a) Lack of knowledge.  (b)
               Lack of means of obtaining knowledge (in the exercise of
24              reasonable diligence the facts could not have been discovered at an
               earlier date).  (c) How and when [s]he did actually discover the
25              fraud or mistake.  Under this rule constructive and presumed notice
               or knowledge are equivalent to knowledge.  So, when the plaintiff
26              has notice or information of circumstances to put a reasonable
               person on inquiry, or has the opportunity to obtain knowledge from
27              sources open to [her] investigation (such as public records or
               corporation books), the statute commences to run.

28   *Parsons v. Tickner*, 31 Cal. App. 4th 1513, 1525 (1995).

6

"One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984).  Defendant contends that plaintiff did not act reasonably as she failed to read a host of loan disclosure documents prior to signing them on September 8, 2006.  Plaintiff urges for application of the relaxed-discovery rule, claiming that her failure to read the loan documents was reasonable because she was in a fiduciary relationship with Mr. Canter, her real estate agent and broker.  *See Brown v. Wells Fargo Bank, N.A.,* 168 Cal. App. 4th 938 (2008).  "A person in a fiduciary relationship may relax, but not fall asleep.  If she became aware of facts which would make a reasonably prudent person suspicious, she had had a duty to investigate further." *Alfaro v. Cmty. Housing Imp. Sys. & Planning Ass'n, Inc.*, 171 Cal. App. 4th 1356, 1394 (2009).

To support her tolling claim, plaintiff puts forward only her own declaration, which states that "Joseph Canter, my real estate agent represented to me that my new loan would have a 4% interest rate, payments would be approximately $794, and would include principal, interest, property taxes, and insurance" (Johannson Decl. ¶ 5).  This is the entirety of plaintiff's statement in the declaration relating to this representation.  No more is said.  Plaintiff does not put forward any evidence to show that she was unable to discover her claim for relief at some time before the statute of limitations ran.

Even assuming plaintiff did not read any of the loan origination documents, which showed an interest rate of more than four percent and monthly payments higher than $794, defendant mailed her a loan statement dated September 16, 2006, reflecting that the interest rate for her loan was 7.510% and that her minimum payment due October 15, 2006, was for $1,127.48 (Def. Exhs. 11, 13; Dolan Decl. ¶ 10).  Indeed, plaintiff stated it was her review of her loan statements in December 2007, which caused her to discover the alleged fraud (Def. Exh. 1 at 31).  Plaintiff does not put forward evidence showing that she did not receive the loan statement dated September 16.  It is plaintiff's burden to put forward evidence sufficient to invoke the delayed-discovery rule to toll the statute of limitations.  Plaintiff has failed to meet her burden.

The dismissal order stated that "[b]ecause this order finds that plaintiff has not pled facts sufficient to establish a fiduciary relationship [between plaintiff and defendant Wachovia],

plaintiff's suppression of fact claim will be treated in conjunction with her intentional

misrepresentation claim" (Dkt. No. 32 at 8) (citing *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal.

App. 4th 282, 291 (2004) (stating "[a]ctive concealment or suppression of facts by a nonfiduciary

is the equivalent of a false representation, *ie.*, actual fraud"). Plaintiff asserts that defendants

(presumably including Wachovia) made false statements to her on August 16, 2006, regarding the

terms of her loan, amounting to intentional misrepresentation and suppression of facts regarding

the actual terms of the loan (Sec. Amd. Compl. ¶ 40). The alleged falsity of any representations

would have been discoverable through reasonable diligence and reading any one of the various

loan documents, signed by plaintiff on September 8, 2006, or by reviewing her monthly statement

dated September 16, 2006. Plaintiff's claims for intentional misrepresentation and suppression of

facts, as they relate to the origination of the loan are time-barred. Summary judgment as to those

claims is **GRANTED**.

### B.    Intentional Infliction of Emotional Distress Claim.

Defendant seeks summary judgment as to plaintiff's claim for intentional infliction of

emotional distress relating to the alleged misrepresentations at the time of the origination of the

loan. The order of dismissal stated that "[t]o the extent plaintiff's claim [for intentional infliction

of emotional distress] is based only on defendant's foreclosure action, it cannot support the

"outrageous prong" (Dkt. No. 32 at 6). Thus, the claim remains only to the extent it relates to the

alleged misrepresentation at the time of the origination of the loan. The statute of limitations for

intentional infliction of emotional distress is two years. CAL. CIV. PROC. § 335.1. As stated

above, plaintiff has not offered any evidence to support tolling of the statute of limitations on her

claims regarding fraud at the time of the origination of the loan, the same fraud, which forms the

basis for this claim.

To state a claim for intentional infliction of emotional distress, a plaintiff must prove: (1)

outrageous conduct; (2) an intent to cause or a reckless disregard of the possibility of causing

emotional distress; (3) severe or extreme emotional distress; and (4) that the outrageous conduct

proximately caused the emotional distress. *Symonds v. Mercury Sav. & Loan Ass'n*, 225 Cal.

App. 3d 1458, 1468 (1990). Plaintiff has failed to put into the summary-judgment record any

1    evidence to rebut defendant's evidence and prove this claim, much less tolling of the statute of

2    limitations. Thus, summary judgment on plaintiff's claim for intentional infliction of emotional

3    distress is **GRANTED**.

              **C.    TILA Claim.**

4

5          Plaintiff appears to have abandoned her claim under the Truth in Lending Act. The

6    subject property was sold at a trustee's sale. The right to rescind under TILA ends when the

7    property is sold. *See* 15 U.S.C. 1635(f). Thus, plaintiff cannot seek rescission at this time. A

8    TILA claim for damages has a one-year statute of limitations. 15 U.S.C. 1640(e). This means

9    plaintiff's damage claim expired in September 2007, one year after she executed the allegedly

10   fraudulent loan (and even if plaintiff had been able to establish tolling, the claim would have

11   expired in December 2008, one year after the date plaintiff alleges to have discovered the fraud).

12   Because plaintiff did not file her claim until November 3, 2009, it is time-barred. Defendant's

13   motion for summary judgment on plaintiff's TILA claim is **GRANTED**.

              **2.    INTENTIONAL MISREPRESENTATION AND SUPPRESSION
                     OF FACT CLAIMS BASED ON LEGAL HOLD.**

14

15         Defendant moves for summary judgment on plaintiff's claims for intentional

16   misrepresentation and suppression of facts based on her allegations that defendant lied to her and

17   told her that there would be a legal hold on her property while defendant was considering her

18   loan-modification request.

19

20         To prove fraud, plaintiff must prove: (1) a knowingly false misrepresentation by the

21   defendant; (2) made with the intent to deceive or to induce reliance by the plaintiff; (3) justifiable

22   reliance by the plaintiff; and (4) resulting damage. *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192,

23   1202 (9th Cir. 2001).

24         As stated above, pursuant to the dismissal order, plaintiff's suppression claim will be

25   treated in conjunction with her intentional misrepresentation claim (Dkt. No. 32 at 8). Plaintiff

26   alleges that on September 18, 2008, defendant's outside counsel, Attorney Gaver, "sent an email

27   to plaintiff's attorney at the time, Brian Kucsan," stating that defendant "placed a legal hold on

28   the files of each of the borrowers [defendant is] working with and so no collection actions will be

     taken at this time" (Sec. Amd. Compl. ¶ 19). On October 3, 2008, Ms. Gaver sent an email to

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   Attorney Kucsan informing him that plaintiff did not qualify for the PGE loan-modification

2   program (Gaver Decl. ¶ 5; Def. Exh. 15).

3       Indeed, on December 12, 2008, when plaintiff informed Attorney Kucsan that her property

4   had gone into foreclosure, Attorney Kucsan informed Attorney Gaver of that fact, and Attorney

5   Gaver stated that defendant would "still consider Ms. Johannson for a loan modification despite

6   the foreclosure" (Gaver Decl. ¶ 7; Kucsan Decl. ¶ 7).  Defendant then agreed to forestall any legal

7   action to obtain possession of the property "unless and until it determined that Ms. Johannson did

8   not qualify for the loan modification" (Gaver Decl. ¶ 7).  Attorney Kucsan and plaintiff continued

9   to provide documentation to Wachovia from December 2008 to January 2009 to assist with the

10  loan-modification review (Gaver Decl. ¶ 8).  On February 3, 2009, defendant informed Mr.

11  Kucsan that no modification would be offered and that it would proceed with action to obtain

12  possession of the subject property (Gaver Decl. ¶ 9; Def. Exh. 16; Kucsan Decl. ¶ 8).  Defendant

13  did not initiate unlawful detainer proceedings until May 2009 (Bailey Decl. ¶ 4).  Plaintiff's

14  attorney admitted that neither he nor plaintiff offered consideration for the alleged promise to

15  postpone the foreclosure sale; plaintiff does not provide evidence of any consideration offered to

16  Wachovia (Kucsan Decl. ¶ 6).  *See Altman v. PNC Mortg.*, 2012 U.S. Dist. LEXIS 6460, *42–43

17  (E.D. Cal. Jan. 19, 1012) ("In the absence of consideration, a gratuitous oral promise to postpone

18  a sale of property pursuant to the terms of a trust deed ordinarily would be unenforceable under

19  Section 1698, the statute of frauds").

20      Plaintiff has put forward no evidence to rebut defendant's showing and to make a showing

21  as to essential elements of her intentional misrepresentation and suppression of facts claims

22  regarding the legal hold.  Thus, defendant's motion for summary judgment on these claims is

23  **GRANTED**.

24          **3.     CALIFORNIA BUSINESS AND PROFESSIONS
                     CODE SECTION 17200.**

25      Defendant moves for summary judgment on plaintiff's Section 17200 claim on the ground

26  that defendant cannot be held vicariously liable for alleged unlawful acts of plaintiff's broker.  To

27  demonstrate a Section 17200 violation, plaintiff must show that defendant engaged in an

28  "unlawful, unfair, or fraudulent business acts or practice" or in "unfair, deceptive, untrue, or

United States District Court
For the Northern District of California

1   misleading advertising."  Plaintiff alleges that her "fraud causes of action against defendant

2   Wachovia are based on it own has [sic] acts of ratification of the fraud perpetuated by Ms.

3   Johannson's real estate agent and broker."  Plaintiff argues that having benefitted from the fraud,"

4   defendant is now liable (Opp. 8).

5          Our court of appeals has held that Section 17200 cannot be used to impose vicarious

6   liability absent "unbridled control" over the other actor.  *Perfect 10 Inc. v. Visa Int'l Serv. Ass'n*,

7   494 F.3d 788, 808 (9th Cir. 2007).  Plaintiff contends generally, that "one who accepts the fruits

8   of a fraud with knowledge of the misrepresentations of concealments by which the fraud was

9   perpetrated, ratifies the fraud and is liable even though they did not personally participate in the

10  fraud and apart from any theory of agency."  *McClung v. J.N. Watt*, 190 Cal. 155, 161–62 (1922).

11  Plaintiff does not explain why this general principle should apply in the face of *Perfect 10*.  It

12  does not.  Mr. Canter was plaintiff's broker.  Mr. Canter was not an agent of defendant or

13  employed by defendant (Dolan Decl. ¶ 4).  Plaintiff has not put forward evidence to show that Mr.

14  Canter was an employee or agent of defendant or that defendant exercised unbridled control over

15  Mr. Canter.  Thus, defendant's motion for summary judgment as to this claim is **GRANTED**.[*]

16      **4.    RES JUDICATA.**

17         In addition to the above-stated grounds, defendant seeks summary judgment on plaintiff's

18  loan origination claims for intentional misrepresentation, suppression of facts, violation of

19  Section 17200, and violation of TILA on the ground that these claims could have been raised in *In*

20  *re Wachovia Corp.,* a class action certified by Judge Jeremy Fogel (Def. Exhs. 20, 21).  Judge

21  Fogel approved a settlement class in that action that included borrowers under pick-a-payment

22

23         [*] Plaintiff objects to the following statement in paragraph 4 of Mr. Dolan's declaration:  "DKP
   Mortgage and its employee, including Mr. Canter, were not agents or employees of Wachovia."  Plaintiff
24  objects on the ground that Mr. Dolan lacks personal knowledge and that his statement is an improper legal
   conclusion (Dkt. No. 49-5 at 2).  Mr. Dolan currently works as an operations analyst in Wachovia's Mortgage
25  Lending Operations Department.  He was previously vice president in the portfolio retention department at
   Wachovia and vice president of loan services at World Savings Banks.  He has held various positions in
26  financial planning, mergers and acquisitions, and loan services.  He has full access to the bank records
   concerning the subject loan transaction.  He has "personal familiarity with all bank customs, practices, and
27  protocols, both generally as to its lending operations and specifically concerning mortgage loan origination and
   servicing issues" (Dolan Decl. ¶¶ 1–2).  Mr. Dolan's experience, background, and position provide an adequate
28  basis for him to state that Mr. Canter was not an employee or agent of Wachovia.  The objection is
   **OVERRULED**.

loans issued by World Savings Bank, FSB between August 1, 2003 and December 31, 2008. Plaintiff claims the only class-action notice she ever received required her to opt in to the class, but she did not (Johannson Decl. ¶ 7). Because the order grants summary judgment on these claims based on other grounds, it does not consider whether summary judgment should be granted on this alternative ground.

**5.    EVIDENTIARY OBJECTIONS.**

Defendant objected to plaintiff Johannson's declaration as inadmissible because it was not signed by plaintiff or attested to by her attorney. As initially submitted, the declaration had an "/s/" above the signature line. Plaintiff is not a registered ECF filer. Pursuant to General Order 45, Sec. X.B., plaintiff either had to physically sign the declaration or her attorney had to attest that plaintiff concurred in the filing of the document. Plaintiff's counsel was ordered to bring a signed copy of plaintiff Johannson's declaration to the motion hearing. Plaintiff's counsel complied with the order. Thus, the declaration will not be deemed inadmissible on that ground. Defendant raised additional evidentiary objections to certain parts of plaintiff's declaration. The order need not rule on those objections as it does not rely on those portions of plaintiff's declaration in reaching its holdings.

Plaintiff objected to the declaration of Michael Dolan. Plaintiff lodged a general objection to Mr. Dolan's declaration as "containing hearsay and lacking in personal knowledge" (Dkt. No. 49-5 at 1). The declaration is five pages in length. Such a general objection cannot be sustained without specific evidentiary objections. Plaintiff does raise specific evidentiary objections to three paragraphs in the declaration. With the exception of the objection to paragraph four, which was overruled, the order need not rule on the remaining objections as it does not rely on the evidence to which plaintiff objected (*see* Part 3).

**6.    REQUEST FOR JUDICIAL NOTICE.**

Defendant requests judicial notice of four documents in support of its motion for summary judgment. The documents are not relied on in this order. Thus, the request for judicial notice is **DENIED AS MOOT**.

United States District Court

For the Northern District of California

**CONCLUSION**

For the reasons stated above, the motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**



Dated:  May 4, 2012.

—————————————————————
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

13